UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXANDER D. NICKS-MCCALEB,

    Plaintiff,

                                  CASE NO.:

v.

T-MOBILE USA, INC.,                JURY TRIAL DEMANDED

    Defendant.
_____/

## COMPLAINT

Plaintiff, Alexander D. Nicks-McCaleb ("Plaintiff" or "Mr. Nicks"), by and through undersigned counsel, hereby files this Complaint against Defendant, T-Mobile USA, Inc. ("Defendant" or "T-Mobile") and states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant for violations of the Federal Communications Act, 47 U.S.C. § 201, *et seq.* ("FCA"), negligence, negligent hiring, retention and supervision, negligent infliction of emotional distress and for injunctive relief.

2. Plaintiff is a current wireless telephone consumer of Defendant.

3. On or about February 24, 2020, Defendant improperly allowed wrongdoers to access Plaintiff's wireless account without his authorization and transfer his telephone number to another carrier. Defendant was unable to contain this security breach, enabling wrongdoers to use Plaintiff's telephone number to withdraw Plaintiff's funds from his Wells Fargo Bank, National Association ("Wells Fargo") bank account.

4. As a result of this breach of security, Plaintiff's Wells Fargo account was subjected to unauthorized transfers of money, Plaintiff was deprived of his use of his cell phone and was required to expend time, energy and expense to address and resolve this financial disruption and mitigate the consequences, and suffered consequential emotional distress.

5. Therefore, Plaintiff seeks damages, costs, and attorney's fees from Defendant for those causes of action.

## JURISDICTION AND VENUE

6. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, as Plaintiff brings a claim under the FCA, 47 U.S.C. § 201. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims and injuries occurred in the Middle District of Florida.

## PARTIES

8. Plaintiff, Alexander D. Nicks-McCaleb, is a natural person and citizen that resides in Hillsborough County, Florida. Moreover, Plaintiff entered into a contract with Defendant for telephone services on or about October 2019.

9. Defendant, T-Mobile USA, Inc., is headquartered in Washington, is a citizen of King County, Washington, does business in the State of Florida, and its practices and acts as alleged in this Complaint have been "charges, practices, classifications, and regulations," as defined by 47 U.S.C. § 201(b). Moreover, Defendant is the mobile communications subsidiary of Deutsche Telekom AG & Co. K.G.

10. The conduct of Defendant was authorized, approved and/or ratified by one or more officers, directors, or managers of Defendant, and/or they knew in advance that the Defendant was likely to conduct itself, and allowed Defendant to so act, with conscious disregard of the rights and safety of others. The agent(s) or employee(s) of Defendant acted within the course and scope of such agency or employment and acted with the consent, permission and authorization of Defendant.

11. The Defendants' conduct, set forth below, was committed wholly without excuse.

12. Plaintiff reserves the right to move the Court to convert and certify this action as a class action on behalf of the yet undefined class of individuals residing within Florida and/or elsewhere who were subject to the same circumstances set forth herein.

## FACTUAL ALLEGATIONS

13. Defendant markets and sells wireless telephone service through standardized wireless service plans at various retail locations, online sales, and over the telephone. In connection with its wireless services, Defendant maintains wireless accounts enabling its customers to have access to information about the services they purchase from Defendant.

14. It is widely recognized that mishandling of customer wireless accounts can facilitate identify theft and related consumer harms.

15. Among other things, T-Mobile's sales and marking materials state "we have implemented various policies and measures to ensure that our interactions are with you or those you authorize to interact with us on your behalf – and not with others pretending to be you or claiming a right to access your information."

16. Defendant's sales and marking materials further state that, unless Defendant can verify the caller's identity through certain personal information or a PIN if requested by the customer, Defendant's policy is not to release any account specific information.

17. Despite these statements and other similar statements, Defendant fails to provide reasonable and appropriate security to prevent unauthorized access to customer accounts. Under Defendant's procedures, an unauthorized person, including Defendant's own agents and employees acting without the customer's permission, can be authenticated and then access and make changes to all the information the legitimate customer could access and make changes to if the customer were so authorized. Defendant also fails to disclose or discloses misleadingly that its automated processes or human performances often fall short of its express and implied representations or promises.

18. On February 24, 2020, Plaintiff was alerted by a telephone call from a caller allegedly with Wells Fargo relating to a fraudulent action on his Wells Fargo bank account. Moreover, it was during this call that Plaintiff was notified that his bank account and credit card had been compromised, and that Plaintiff needed a new credit card and to change his PIN on his bank account.

19. As soon as the call with Wells Fargo ended, Plaintiff was immediately notified that his SIM card did not have "voice provisions" and that his cellular telephone had been cut off from the T-Mobile network.

20. Plaintiff immediately lost the ability to use his cellular telephone and therefore, resorted to using his girlfriend's phone to attempt to remedy the situation.

21. Plaintiff was subsequently notified that his cellular telephone and contract had been cancelled. Indeed, Plaintiff was asked for his security code for his account, however, when Plaintiff stated the security code that he had previously created for his account, Defendant advised him that the security code was incorrect and was told that he would need to go into a store to verify his identification.

22. Unbeknownst to Plaintiff, Defendant had transferred control of Plaintiff's phone number to a device under the control of someone else.

23. In an attempt to confirm if Plaintiff's cellular telephone would at least work when using WiFi, his girlfriend called his cellular telephone. Plaintiff's girlfriend was able to connect and complete the call to Plaintiff's telephone number, however, another individual answered the call. Plaintiff's girlfriend then inquired as to who had answered the phone and the unknown individual abruptly hung up.

24. Due to the above-mentioned interaction with the unknown individual, Plaintiff again called Defendant to inquire as to what was occurring with his cellular telephone. During this conversation, Defendant told Plaintiff that Plaintiff would obtain access to his cellular telephone again for his personal use.

25. Meanwhile, as a result of Defendant's failure to provide reasonable and appropriate security to prevent unauthorized access to Plaintiff's wireless account, wrongdoers were able to request verification codes to be sent to Plaintiff's cellular telephone number in order to change Plaintiff's password on his Wells Fargo bank account. This allowed the wrongdoers to withdraw $13.00 on February 24, 2020.

26. On February 24, 2020, after multiple calls with Defendant and Wells Fargo, Defendant assured Plaintiff that the wrongdoers would be disabled from using his cellular telephone number and that Plaintiff's accounts would be safe.

27. However, Defendant's assurance that Plaintiff's accounts would be safe was short lived as shortly after his last telephone call with Defendant, Plaintiff realized that more of his money had been transferred from his account without his authorization. More specifically, $300.00 had been withdrawn from an ATM in Hollywood, FL. Further, $500.00 had been transferred to an account that appeared to be associated with Plaintiff's aunt.

28. Just before midnight on February 24, 2020, Plaintiff again called Wells Fargo, requesting that his Wells Fargo bank account be completely disabled as Defendant was unable to disable the wrongdoers from using his cellular telephone number.

29. On February 25, 2020, Plaintiff was notified by JPMorgan Chase Bank, National Association, f/k/a Chase Bank USA, National Association ("Chase") that a new credit card had been requested and Apple Pay had been set up on Plaintiff's account. Plaintiff did not authorize or request the issuance of a new credit card, neither did he set up Apple Pay as he does not own an iPhone. Defendant failed again to disable the wrongdoers use of Plaintiff's cellular telephone number, allowing the wrongdoers to continue using Plaintiff's cellular telephone number to then illegally access Plaintiff's accounts.

30. Plaintiff went into Defendant's store located at 221 N. Westshore Boulevard, #32C, Tampa, FL 33609 on February 25, 2020 to attempt to obtain complete use of his cellular telephone number again. Plaintiff was given a temporary cellular telephone number and was advised that this process could take upwards of twenty-four (24) hours.

31. Shortly after receiving a temporary cellular telephone number from Defendant, Plaintiff called Chase to report the fraud, disable Apple Pay permanently and request a new credit card.

32. Plaintiff also called Capital One Bank (USA), National Association ("Capital One"), in an abundance of precaution, to lock his bank account and request a new credit card. Fortunately, Plaintiff proactively called Capital One because the wrongdoers were also attempting to obtain his bank account information for Capital One through the use of Plaintiff's cellular telephone number.

33. Plaintiff reported the incident to Hillsborough County Police Department.

34. As a result of the events, Plaintiff also notified Equifax credit reporting agency to have a fraud alert placed on all of his accounts.

35. Defendant's constant failure to follow through on its assurances continued to expose Plaintiff to greater financial losses.

36. Nearly at the close of business on February 25, 2020, Plaintiff was notified that his cellular telephone number had been restored. Plaintiff then requested additional security measures to what he had already established with Defendant to ensure that this did not occur again. Plaintiff was then advised that because Plaintiff was a victim of fraud, Defendant could establish a system where a text message could be sent to Plaintiff and was required to be confirmed by Plaintiff in the event of any requests for changes.

37. During follow up calls with Wells Fargo, Plaintiff was made aware that the wrongdoers were able to change information regarding the $500.00 transfer that made it appear that it was to his aunt, although the transfer was in fact made directly to the wrongdoers.

38. On February 29, 2020, Plaintiff again went to one of Defendant's stores located at 11727 W. Hillsborough Avenue, Tampa, FL 33635. During this in-store visit, a T-Mobile representative read aloud to Plaintiff part of Plaintiff's account record during when his cellular telephone was compromised. The account record stated in pertinent part that the wrongdoer calling did not know the PIN number for the account, however, was able to provide the last four numbers of Plaintiff's social security number. Plaintiff never authorized Defendant to allow access to his account by only using the last four numbers of his social security number. Moreover, the T-Mobile representative indicated that allowing access to an account by using simply the last four numbers of the social security number was not a part of their normal policies or procedures.

39. As a result of the incident, Plaintiff's financial accounts were locked and Plaintiff has not been able to pay for surgery for his dog as well as keep up with his regular bills.

40. Plaintiff was forced to incur debt in the form of personal loans in order to pay his regular bills that he would not have had to obtain if not for these events.

41. Further, Plaintiff was unable to use his telephone for a period of time, affecting his ability to perform duties related to his employment or communicate with his family, who lives overseas.

42. Before Plaintiff's account had been compromised, Plaintiff had specifically asked Defendant to add additional security measures on his account in part by enabling a PIN to access his account.

43. Plaintiff understood based on his conversation with the Defendant to create the PIN, that his PIN would be validated in order to access his account or as part of any port out requests (transferring of his cellular telephone number to another carrier), including by a new carrier.

44. In fact, Defendant even published an article on their website on October 29, 2019, over four months before this incident, explaining account takeover fraud and provided recommendations on how customers can protect their accounts. T-Mobile states in this article "All T-Mobile accounts are assigned a 6-15 digit PIN, all accounts have this protection and a customer's number cannot be ported without verification of that PIN. We also use this PIN to authenticate customers when they call Care." **Exhibit A.**

45. Upon information and belief, Defendant failed to comply with Plaintiff's request. Despite having asked Defendant for additional security, Plaintiff suffered significant financial harm.

46. By its procedures, practices, and regulations, Defendant engages in practices that, taken together, fail to provide reasonable and appropriate security to prevent unauthorized access to its customer wireless accounts, allowing unauthorized persons to be authenticated and then granted access to sensitive customer wireless account data.

47. In particular, Defendant has failed to establish or implement reasonable policies, procedures, or regulations governing the creation and authentication of user credentials for authorized customers accessing accounts of Defendants, creating unreasonable risk of unauthorized access. As such, at all times material hereto, Defendant has failed to ensure that only authorized persons have such access and that all customer accounts are secure.

48. Among other things, T-Mobile:

   a. fails to establish or enforce rules sufficient to ensure only authorized persons have access to Defendant's customer accounts;

   b. fails to establish appropriate rules, policies, and procedures for the supervision and control of its officers, agents, or employees;

   c. fails to establish or enforce rules, or provide adequate supervision or training, sufficient to ensure that all its employees or agents follow the same policies and procedures. For example, it is often possible to persuade one of Defendant's agents to not apply the stated security policy and allow unauthorized access without providing a PIN. Similarly, on information and belief, T-Mobile agents or employees generally act on their own regardless of what is in the notes of a customer account, failing, among other things, to accommodate customers' security requests;

   d. fails to adequately safeguard and protect its customer wireless accounts, including that of Plaintiff, so wrongdoers were able to obtain access to his account;

   e. permits the sharing of and access to user credentials among Defendant's agents or employees without a pending request from the customer, thus reducing likely detection of, and accountability for, unauthorized accesses;

  f. fails to suspend user credentials after a certain number of unsuccessful access attempts. For example, wrongdoers would call numerous times trying to gain access to customer accounts before they finally got an agent on the line that would authorize access without requiring, for example, a PIN;

  g. fails to adequately train and supervise its agents and employees in such a manner that allows its agents or employees, without authorization or approval, to unilaterally access and make changes to customer accounts as if the customer were so authorized;

  h. allows porting out of phone numbers without properly confirming that the request is coming from the legitimate customers;

  i. lacks proper monitoring solutions and thus fails to monitor its systems for the presence of unauthorizes access in a manner that would enable Defendant to detect the intrusion so that the breach of security and diversion of customer information was able to occur in Plaintiff's situation and continue until after his personal banking accounts were compromised;

  j. fails to implement simple, low-cost, and readily-available defenses to identity thieves such as delaying transfers from accounts on which the password was recently changed or simply delaying transfers from accounts to allow for additional verifications from the customers; and

  k. fails to build adequate internal tools to help protect its customers against hackers and account takeovers, including compromise through phone porting and wrongdoing by its own agents or employees acting on their own behalf or on behalf or at the request of a third party.

49. By the security practices and procedures described here, Defendant established user credential structures that created an unreasonable risk of unauthorized access to customer accounts, including that of Plaintiff.

50. On information and belief, Defendant has long been aware about the security risks presented by, *inter alia*, its weak user credential structures or procedures. Defendant has long had notice of those risks from prior attacks on customer accounts and even published an article on its website advising customers about these attacks. Moreover, Defendant did not use readily-available security measures to prevent or limit such attacks.

51. As a result of Defendant's faulty security practices, an attacker could easily gain access to a customer's account and then use it to gain access to the customer's sensitive information such as bank accounts or virtual currency accounts, among other things.

52. As such, Defendant's security measures were entirely inadequate to protect its customers, including Plaintiff.

53. Lack of adequate security in Defendant's systems, practices, or procedures enabled the wrongdoers to access Plaintiff's wireless account, which then enabled the wrongdoers to access Plaintiff's personal bank accounts and possibly other sensitive information.

54. As such, Defendant failed the responsibility it owed to Plaintiff to protect his account and his phone number. Even if the subject incident was due to human performance falling short, Defendant is responsible for its agents. And, while Defendant can outsource customer service functions, Defendant cannot transfer accountability.

55. If not for Defendant's failure to provide adequate account security or exercise reasonable oversight, Plaintiff would not have lost his phone number or otherwise been damaged.

56. Unfortunately, Plaintiff is not the only customer of Defendant to suffer as a result of Defendant's failure to ensure adequate security of its customer accounts.

57. As a direct consequence of Defendant's actions or inactions, Plaintiff has suffered and continues to suffer actual damages, including: (a) lost time; (b) embarrassment and humiliation; (c) aggravation and frustration; (d) fear; (e) anxiety; (f) financial uncertainty; (g) unease; (h) emotional distress, and (i) expenses, including but not limited to missed work.

## COUNT I

## VIOLATIONS OF THE FCA, 47 U.S.C § 201, *ET SEQ.* BY DEFENDANT

58. This is an action against Defendant for violation of 47 U.S.C. § 201, *et seq*.

59. Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

60. The FCA regulates interstate telecommunications carriers such as Defendant.

61. Defendant is a common carrier engaged in interstate communication by wire for the purpose of furnishing communication services within the meaning of 47 U.S.C. § 201(a). As a "common carrier," Defendant is subject to the substantive requirements of 47 U.S.C. § 201 and 47 U.S.C. § 202.

62. Under 47 U.S.C. § 201(b), common carriers may impose only those practices, classifications, and regulations that are "just and reasonable." And, under 47 U.S.C. § 202(a), common carriers are prohibited from making any unjust or unreasonable discrimination in "practices, classifications, regulations, facilities, or services."

63. Should a common carrier "omit to do any act, matter, or thing in this chapter required to be done," 47 U.S.C. § 206 dictates that the "common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation ... together with a reasonable counsel or attorney's fee[.]"

64. Defendant's conduct, as alleged here, constitutes a knowing violation of 47 U.S.C. § 201(b) and 47 U.S.C. § 202(a). Further, under 47 U.S.C. § 217, Defendant is also liable for the acts, omissions, or failures, as alleged in this Complaint, of any of its offers, agents, or other persons acting for or employed by Defendant.

65. Additionally, Defendant is a "telecommunications carrier" within the meaning of 47 U.S.C. § 222, which requires every telecommunication carrier to protect, among other things, the confidentiality of proprietary information of, and relating to, customers.

66. Defendant's conduct, as alleged here, constitutes a knowing violation of 47 U.S.C. § 222. On information and belief, Defendant disclosed, without Plaintiff's approval, Plaintiff's proprietary information to a third party or parties for reasons other than for emergency services. Defendant also improperly permitted access to Plaintiff's customer proprietary network information in Defendant's provisions of its services.

67. As a direct consequence of Defendant's violations of the FCA, Plaintiff has been damaged and continues to be damaged.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant, finding that Defendant violated the FCA, awarding Plaintiff actual damages, statutory damages, punitive damages, attorneys' fees and costs, and awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

## COUNT II

## NEGLIGENCE BY DEFENDANT

68. This is an action against Defendant for negligence.

69. Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

70. Defendant owed Plaintiff a duty of care in the handling and safeguarding of his customer account for the purposes of providing wireless services.

71. Defendant told Plaintiff that Plaintiff's PIN would be validated in order to access his account or as part of any port out requests (transferring of his cellular telephone number to another carrier), including by a new carrier.

72. Further, Defendant's own website states that a customer's number cannot be ported without verification of that PIN.

73. Defendant breached the duties it owed to Plaintiff by failing to confirm Plaintiff's security PIN, thereby allowing an unauthorized wrongdoer to access Plaintiff's account and port Plaintiff's telephone number to another carrier and user.

74. Defendant was negligent, careless, and reckless by allowing an unauthorized individual to access Plaintiff's account without verifying Plaintiff's PIN.

75. As a direct and proximate result of Defendant's negligence, Defendant caused Plaintiff harm.

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Defendant for negligence, awarding Plaintiff actual damages, plus pre-judgment and post-judgment interest, punitive damages, attorneys' fees and costs, and awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

## COUNT III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANT

76. Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

77. Through its actions described above, Defendant's conduct was negligent.

78. Defendant knew or should have known that emotional distress would likely result as to Plaintiff.

79. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer emotional distress that is serious or severe.

80. Because of Defendant's negligent infliction of emotional distress on Plaintiff, Plaintiff is entitled to actual and punitive damages to be proven at trial.

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Defendant for an action for negligent infliction of emotional distress, awarding Plaintiff actual damages, plus pre-judgment and post-judgment interest, punitive damages, attorneys' fees and costs, and awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

## COUNT IV

## NEGLIGENT HIRING, RETENTION, AND SUPERVISION BY DEFENDANT

81. Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

82. At all times material hereto, Defendant's agents, officers, and employees, including those directly or indirectly responsible for or involved in transferring Plaintiff's phone number to another carrier were under Defendant's direct, supervision, and control.

83. Defendant further assumed this duty by holding its officers, agents, and employees out to the public as competent representatives.

84. On information and belief, Defendant negligently retained, controlled, trained, and supervised its agents and employees when Defendant knew or should have known they posted a security threat. Defendant knew or should have known that its agents or employees would allow unauthorized access its customer accounts, including that of Plaintiff.

85. On information and belief, Defendant negligently retained, controlled, trained, and supervised its agents and employees so they committed the wrongful acts complained of herein against Plaintiff and other members of the public. On information and belief, Defendant failed to properly control and supervise them to ensure customer account safety.

86. It was foreseeable to Defendant its agents and employees would compromise customer account safety or engage in other acts complained of here. Despite this knowledge, Defendant failed to exercise reasonable care to supervise or control its agents and employees. On information and belief, Defendant engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its agents and employees.

87. As a direct result of Defendant's negligent hiring, control, retention, and supervision, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Defendant for an action for negligent hiring, retention, and supervision, awarding Plaintiff actual damages, plus pre-judgment and post-judgment interest, punitive damages, attorneys' fees and costs, and awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

## COUNT V

## INJUNCTIVE RELIEF AGAINST DEFENDANT

88. Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

89. Plaintiff seeks an order enjoining Defendant from handling customer accounts, including that of Plaintiff, in the unlawful manner described above.

90. Plaintiff has reason to believe these actions make up a pattern and practice of behavior and have affected other individuals similarly situated.

91. Injunctive relief is necessary to prevent further injury to Plaintiff and to the general public.

WHEREFORE, Plaintiff respectfully requests this Court enter an order against Defendant, awarding Plaintiff damages for any and all damages (including but not limited to, mental anguish, despair, frustration, embarrassment, nervousness, anger, and loss of capacity to enjoy life) as well as attorneys' fees and costs.

## COUNT VI

## DECLARATORY JUDGMENT ACT  28 U.S.C. § 2201, ET SEQ.

92. This is an action against Defendant under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

93. Plaintiff realleges and incorporates paragraphs 1 through 57, as if fully set forth herein.

94. Under the Declaratory Judgment Act, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

95. Further, "necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

96. As detailed above, Defendant failed in its responsibility that it owed to Plaintiff to protect his account and his phone number. Moreover, Defendant's lack of adequate security in Defendant's systems, practices, or procedures enabled the wrongdoers to access Plaintiff's wireless account, which then enabled the wrongdoers to access his personal bank accounts and possibly other sensitive information.

97. There is an actual controversy within the jurisdiction of this Court regarding Defendant's lack of adequate security in Defendant's systems, practices, or procedures.

98. Defendant's failure to provide adequate account security or exercise reasonable oversight has resulted in many customers suffering similar harms resulting from Defendant's failure to ensure adequate security of its customer accounts.

99. Plaintiff therefore seeks a declaratory judgment finding that Defendant's conduct violates the Declaratory Judgment Act.

100. Moreover, Defendant should be required to disgorge all amounts paid from consumers who suffered the harms referenced above as a result of Defendant's lack of adequate security in Defendant's systems, practices, or procedures.

101. WHEREFORE, Plaintiff respectfully requests this Court enter a Declaratory Judgment in Plaintiff's favor: (1) finding that Defendant lacks adequate security in Defendant's systems, practices, or procedures.; (2) finding that Defendant violated the FCA; (3) requiring Defendant to disgorge all amounts paid from consumers who suffered the harms referenced above as a result of Defendant's lack of adequate security in Defendant's systems, practices, or procedures; and (4) awarding Plaintiff any and all damages as well as attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. Amend. 7 and Fed. R. Civ. P. 38.

Dated:  March 24, 2020	Respectfully Submitted,

                                                **SHRADER LAW, PLLC**
612 W. Bay Street
Tampa, Florida 33606
Phone:  (813) 360-1529
Fax:     (813) 336-0832


/**s**/ Brian L. Shrader
**BRIAN L. SHRADER, ESQ.**
Florida Bar No. 57251
e-mail: bshrader@shraderlawfirm.com
*Attorney for Plaintiff*